**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DOMINICK DeDEO,**

                                        **Petitioner,**

**v.**                                                          **9:09-CV-0946**
                                                                    **(TJM)**

**W. BROWN, Superintendent,**

                                        **Respondent.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**FOR THE PETITIONER:**

**DOMINICK DeDEO**
Petitioner, *pro se*
07-A-0306
Eastern NY Correctional Facility
Box 338
Napanoch, NY 12458

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**              **LISA FLEISCHMANN, ESQ.**
Attorney General for the State of New York      Assistant Attorney General
120 Broadway
New York, NY 10271

**THOMAS J. MCAVOY**
**UNITED STATES DISTRICT JUDGE**

**I.       BACKGROUND**

         **A.       State Court Proceedings**

         According to the state court records provided to this Court, on January 19, 2006, a

Columbia County Grand Jury charged petitioner, *pro se* Dominick DeDeo with five counts of

Grand Larceny in the Second Degree, in violation of New York Penal Law ("Penal Law") §

155.40(1), two counts of Grand Larceny in the Third Degree, contrary to Penal Law § 155.35, and one count of Scheme to Defraud in the First Degree, in violation of Penal Law § 190.65(1)(b). *See* Indictment No. 06-001AG (Dkt. No. 12-1 at pp. 58-61) ("Indictment").[1]   The Bill of Particulars filed by the prosecutor detailed the specific amounts of money alleged to have been stolen by DeDeo from the seven victims named in the larceny counts of the Indictment, as well as the dates of those claimed thefts. *See* Bill of Particulars (Dkt. No. 12-1 at pp. 62-66) ("Bill of Particulars"). The Bill of Particulars explained that the larcenies charged in counts One through Seven "were committed as part of this scheme to defraud." *Id.* at p. 5.

At a pretrial conference before Columbia County Court Judge Paul Czajka, DeDeo's counsel noted that he had been informed by the prosecutor that she intended to call investor clients of DeDeo who were not named in the Indictment as witnesses in support of the scheme to defraud charge. Dkt. No. 12-1 at p. 67. Defense counsel argued that the proposed witnesses should be precluded from testifying because they had "no jurisdictional relationship whatsoever to Columbia County." *Id.* at p. 72. The prosecutor then explained that the proposed witnesses were "part of [DeDeo's] scheme to defraud," and that there was a "jurisdictional predicate" for the testimony of all of their proposed witnesses because "at least one of [DeDeo's] acts occurred in Columbia County." *Id.* at p. 74. After a detailed discussion between the prosecutor and Trial

---

[1] The Indictment contained eight separate counts; the first seven counts alleged that DeDeo committed grand larceny with respect to the following victims: Leslie Larsen, Linda Larsen, Richard DesChamps, Janet DesChamps, Jean Smith, Nancy Dill, and Alcena Roof. *See* Indictment, Counts One through Seven. The Eighth Count of that accusatory instrument alleged that DeDeo committed the crime of scheme to defraud in the first degree by engaging in a "systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtained property with a value in excess of one thousand dollars from one or more such persons." *Id.*, Count Eight.

Court on the issue of which witnesses the prosecution intended to call in support of the charges brought against DeDeo, *see id.* at pp. 74-81, the Court asked the Assistant District Attorney why she had limited her Bill of Particulars to the seven victims named in the larceny counts. *Id.* at p. 82. The prosecutor then explained that it "certainly wasn't [her] intent" to only limit her proof to the victims listed in a larceny counts, *id.* at p. 83, and noted that she had previously provided DeDeo's counsel with a "spreadsheet showing the dollar amounts and the checks, and a stack of 50 pages, one for each victim" of DeDeo's crimes, including victims not specifically identified in the larceny charges  *Id.* at pp. 91-92.  The prosecutor then stated that if the Bill of Particulars was being "misconstrued to somehow limit it to just counts 1 to 7, which was not our intent, then we move to amend the Bill of Particulars to say:  'But the victims named in counts 1 through 7 are not the only victims.' "  *Id.* at p. 98.  The Trial Court then asked defense counsel what he would need if the court were to grant the prosecution's request to modify the Bill of Particulars.  *Id.* at pp. 101-02.  Defense counsel advised the court that he would request a limiting instruction from the court when testimony relating to the eighth count was presented to the jury, but specifically informed Judge Czajka that defense counsel did not want additional time to supplement his defense to the charges brought against DeDeo.  *Id* at p. 103.  The County Court ultimately allowed the prosecutor to amend the Bill of Particulars.

DeDeo's jury trial on the above charges commenced in Colombia County Court before Judge Czajka.  During the course of jury selection, in response to defense counsel's *voir dire* questioning of Juror No. 105, that prospective juror initially indicated that he thought that DeDeo would not be in court unless he were guilty.  Dkt. No. 12-1 at p. 114.  The Trial Court then asked the juror whether he could "set aside that inclination . . . and follow the law exactly

as I give it to you, including that most basic principle . . . that the Defendant is presumed to be innocent." *Id*. at p. 114-15.  Juror No. 105 said "[y]es." *Id.* at p. 116.  As the *voir dire* continued, Juror No. 105 said to defense counsel, "I think it's . . . your responsibility as [DeDeo's] lawyer to prove to us [DeDeo's innocence] beyond a reasonable doubt." *Id.* at p. 118.  The court, however, corrected that erroneous belief and specifically explained that "[o]nly the People . . . have the burden of proof.  [DeDeo] does not have to prove his innocence.  He doesn't have to prove anything." *Id.* at p. 119.  Juror No. 105 responded "I understand," *id.* at p. 120, and when the court pressed further, "[a]nd are you able to follow those principles of law," he replied "[i]n principle, yes." *Id.*  The questioning of that prospective juror continued for a brief period of time, after which defense counsel challenged Juror No. 105 for cause. *Id.* at pp. 124-25.  The prosecutor opposed that application, and the Court denied the request, finding that the prospective juror's responses "indicate to [the court] clearly and without any question that he . . . was capable of following the instructions and holding the people to their burden and following all those other basic principles." *Id.* at p. 125.

In presenting its evidence against DeDeo, the Assistant District Attorney called, *inter alia*, DeDeo's son, Joseph DeDeo.  *See* Transcript of Trial of Dominick DeDeo (reproduced in Appellant's and Appellee's Appendices on Appeal) (Dkt. Nos. 12-1, 12-2 and 12-6) (collectively "Trial Tr.") at p. 265.  He testified that in 1994 or 1995, he and his father created Lark Estate Organizers, an estate planning business. *Id.* at p. 266.  They purchased a mailing list of people who were "[o]ver 45, over 50, something to that effect" and sent mailings that permitted people to tear off a response card to request a consultation. *Id.* at pp. 267-68.  The two would discuss estate planning with prospective clients, many of whom ultimately

4

purchased living trusts. *Id*. at p. 268. The prosecution also called several victims of DeDeo

crimes who testified about their interactions with DeDeo and the money they lost as a result of

their investments with companies in which he was involved. In summarizing their testimony,

the Appellate Division noted that "[f]ive clients testified that, after being solicited by [DeDeo,

they] liquidated assets, invested the proceeds with [DeDeo] in exchange for his promise of a

certain rate of return and never recouped what they were promised. They also testified that

[DeDeo] failed to return the principal invested by them despite their requests that he do so."

*People v. DeDeo*, 59 A.D.3d 846, 849 (3d Dep't 2009).

At the conclusion of his trial, the jury found DeDeo guilty of all of the crimes charged.

Trial Tr. at pp. 801-04. On August 7, 2006, the County Court sentenced DeDeo to an

aggregate, indeterminate prison term of between nineteen and two-thirds to fifty-nine years.

*See* Transcript of Sentencing of Dominick DeDeo (Dkt. No. 12-2) at p. 50. That court also

ordered DeDeo to pay restitution in the amount of $1,841,780.28. *Id.* at pp. 36-37.

In August, 2008, DeDeo filed, through counsel, an appeal relating to the foregoing

conviction with the New York State, Supreme Court, Appellate Division, Third Department.

*See* Appellate Brief on Appeal (Dkt. No. 12-1) ("App. Br.") at pp. 2-53. In that appellate brief,

counsel argued that: i) the verdict was against the weight of the evidence; ii) the court's order

which permitted the prosecutor to amend the Bill of Particulars served to improperly

constructively amend the Indictment; iii) the Trial Court erred in denying defense counsel's for

cause challenge to a juror; and iv) DeDeo's sentence was harsh and excessive. *Id.* On August

14, 2008, DeDeo filed a *pro se* supplemental brief in further support of his appeal in which he

argued that: i) the County Court lacked geographical jurisdiction to hear the case; ii) the Trial

5

Court's restitution order was improper as it reimbursed victims who were not the subject of the charges; and iii) the prosecutor exceeded her authority by presenting to the Grand Jury evidence obtained through "Martin Act" subpoenas.[2]  *See* Dkt. No. 12-4 ("*Pro Se* Appellate Brief").  On February 26, 2009, the Appellate Division unanimously affirmed DeDeo's conviction.  *See DeDeo*, 59 A.D.3d at 846-851.  DeDeo's counsel sought leave to appeal that decision from the New York Court of Appeals, *see* Dkt. No. 12-10 ("Leave Application"), however on March 31, 2009, that application was denied.  *See People v. DeDeo*, 12 N.Y.3d 782 (2009), *reconsideration denied*, *People v. DeDeo*, 12 N.Y.3d 914 (2009).

    **B.**    **This Action**

Petitioner commenced the present action, *pro se*, on August 19, 2009.  *See* Petition.  In support of his request for federal habeas intervention, DeDeo argues:  i) the verdict was against the weight of the evidence; ii) the Indictment was improperly, constructively amended because the Trial Court wrongfully allowed the prosecutor to amend the Bill of Particulars on the eve of trial; iii) the County Court erred in denying DeDeo's for cause challenge concerning Juror No. 105; iv) DeDeo's sentence is unduly harsh and excessive; v) the Trial Court lacked geographical jurisdiction over the first two counts of the Indictment and that the County Court lacked such

---

    [2] Under the Martin Act, (Article 23-A of the General Business Law), New York General Business Law § 352 *et seq*., ("Martin Act"), the New York State Attorney General has the power to "restrain any person who is engaged or who is about to engage in the business of selling the securities and commodities designated in the statute by means and aid of fraudulent methods and practices."  *People v. Bunge Corp.*, 25 N.Y.2d 91, 99 (1969).  "In 1982, the Martin Act was amended . . . to provide a higher criminal penalty for anyone who intentionally engages in fraudulent conduct 'in securities transactions . . . .' "  *People v. Hasslinger*, 4 A.D.3d 564, 565 (3d Dept. 2004).  "The types of unscrupulous transactions targeted by the amendment include[] . . . 'ponzi schemes, insider trading, pyramid schemes, fictitious transactions and other artifices to defraud the investing public.' "  *Id*. at 566.

jurisdiction over the remaining counts in the Indictment as a matter of law; vi) the County Court's restitution order is illegal; and vii) the prosecutor utilized "illegally procured" evidence to secure the Indictment.  *See* Petition at ¶ 12.

On November 2, 2009, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed a response in opposition to DeDeo's petition.  Dkt. No. 10. Respondent also filed a memorandum of law in opposition to the petition (Dkt. No. 11) ("Resp. Mem."), as well as various state court records relating to DeDeo's conviction.  Dkt. No. 12.  In opposing DeDeo's habeas application, respondent argues that petitioner is procedurally barred from obtaining the relief he seeks as to certain of his grounds for relief, and that all of his claims lack merit.  *See* Resp. Mem.  By Text Order entered March 31, 2010, DeDeo was afforded the opportunity to file a Traverse in further support of his petition, however by letter filed September 30, 2010, DeDeo advised the Court that he would not be filing any Traverse in this action.  Dkt. No. 20.

This matter is now currently before this Court for disposition.

## II.    DISCUSSION

### A.    <u>Unexhausted Claims</u>

As noted above, respondent claims that DeDeo is procedurally barred from pursuing several of the grounds for relief he has asserted herein.  *See* Resp. Mem.  In support of this argument, respondent contends that DeDeo has not fully exhausted his claims which allege that: i) the jury's verdict was against the weight of the evidence; ii) the Trial Court wrongfully allowed the constructive amendment of the Indictment; iii) the County Court improperly denied defense counsel's for cause challenge to Juror No. 105; iv) the Trial Court lacked geographical

jurisdiction over DeDeo with respect to the first two counts in the Indictment; and v) the restitution order imposed on DeDeo by the Trial Court must be vacated.  *See* Resp. Mem. at pp. 19-23.

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . .' "  *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)); *see also Hill v. Mance*, 598 F.Supp.2d 371, 375 (W.D.N.Y. 2009).  This is because "[s]tate courts, like federal courts, are obliged to enforce federal law."  *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)) (other citations omitted).  As the Supreme Court noted in *O'Sullivan*, "[c]omity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."  *Id.*, 526 U.S. at 844 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).[3]  Thus, this Court must determine whether petitioner has fully exhausted the above-mentioned grounds for relief.

A petitioner exhausts his state remedies in the federal habeas context by:  "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim."  *Ramirez v. Attorney*

―――――――――――――――

[3] This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  *O'Sullivan*, 526 U.S. at 845 (quotation and citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).

*Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).[4]

A "basic requirement" of this exhaustion doctrine is that "the nature or presentation of the claim

must have been likely to alert the court to the claim's federal nature." *Jones v. Vacco*, 126 F.3d

408, 413 (2d Cir. 1997) (citation omitted); *see also Berry v. Hulihan,* No. 08 Civ. 6557, 2009

WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); *Jackson v. Senkowski*, No. 03

CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007).  A "state prisoner does not 'fairly

present' a claim to a state court" where the appellate brief "does not alert [the court] to the

presence of a federal claim . . . ." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Williams*

*v. Breslin*, No. 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing

*Baldwin*).  Moreover, a petitioner must have asserted all claims for which federal habeas review

is sought in his application seeking leave to appeal from New York's Court of Appeals.  *See*

*Galdamez*, 394 F.3d at 74-75 (citations omitted); *Morgan v. Bennett*, 204 F.3d 360, 369 (2d

Cir. 2000) (describing process for seeking leave to appeal to New York's Court of Appeals);

*Jamison v. Girdich*, No. 03 CIV.4826, 2005 WL 2338660, at *4 (S.D.N.Y. Sept. 26, 2005);

*Geraci v. Sheriff, Schoharie County Jail*, No. 9:99-CV-0405, 2004 WL 437466, at *3

(N.D.N.Y. Feb. 20, 2004) (Sharpe, J.) (citations omitted).

     Nowhere in petitioner's appellate brief did counsel cite, or refer in any way, to any

federal case, statute or provision of the United States Constitution, when counsel asserted his

---

[4] Habeas corpus petitioners bear the burden of demonstrating that they have fully
exhausted available state remedies.  *Fink v. Bennett*, 514 F.Supp.2d 383, 388 (N.D.N.Y. 2007)
(McCurn, S.J.) (collecting cases).

appellate arguments that the convictions were against the weight of the evidence,[5] or that the

Trial Court wrongfully permitted the constructive amendment of the Indictment by allowing the

prosecution to amend the Bill of Particulars.  *See* App. Br. at pp. 26-33.  DeDeo's *Pro Se*

Appellate Brief similarly failed to alert the Appellate Division of the presence of a federal claim

with respect to his arguments that the Trial Court lacked geographical jurisdiction over DeDeo

with respect to the first two counts in the Indictment, and/or that the restitution portion of the

County Court's sentence must be vacated.  *See Pro Se* Appellate Brief at pp. 5-7, 13-17.

     Moreover, none of the state court decisions cited by appellate counsel in the portions of

that brief relating to the weight of the evidence adduced at trial, or the claimed constructive

amendment of the Indictment, refer to any decision of any federal court, or any provision of the

United States Constitution, in the portions of those state court opinions which address appellate

claims similar to those asserted by DeDeo in this action.  *See* App. Br. at pp. 26-30 (appellate

claim challenging the weight of evidence) (citing *People v. Cahill*, 2 N.Y.3d 14, 57-61 (2003);

*People v. Luongo*, 47 N.Y.2d 418, 427-30 (1979); *People v. Churchill*, 47 N.Y.2d 151, 157-59

(1979); *People v. Ferry*, 142 A.D.2d 994, 994-95 (4th Dept. 1988); *People v. Valenza*, 60

N.Y.2d 363, 368-70 (1983); *People v. Gannett*, 49 N.Y.2d 296, 301-03 (1980); and *People v.*

*Mikuszewski*, 73 N.Y.2d 407, 412-16 (1989)); App. Br. at pp. 31-33 (appellate challenge

concerning change to Bill of Particulars and alleged constructive amendment of Indictment)

(citing *People v. McAfee*, 76 A.D.2d 157, 159 (3d Dept. 1980); *People v. Keller*; 204 A.D.2d

767, 767-68 (3d Dept. 1994); *People v. Utter*, 76 A.D.2d 1013, 1013-14 (3d Dept. 1980); and

---

    [5] Appellate counsel specifically noted in his brief he was ***not*** asserting an appellate
challenge to the sufficiency of evidence adduced at trial.  *See* App. Br. at p. 26 n.5.

*People v. Young*, 33 A.D.3d 1120, 1122-24 (3d Dept. 2006).

Additionally, the state court cases cited by DeDeo in the portion of his *Pro Se* Appellate Brief in which he claimed that the County Court lacked geographic jurisdiction over DeDeo with respect to the first two counts in the Indictment, and that challenged the propriety of the restitution order, similarly fail to cite any decision of any federal court, or any federal statute or provision of the United States Constitution, in their decisions addressing those aspects of the appellate claims before them. *See Pro Se* Appellate Brief at pp. 5-7 (asserting geographic jurisdictional challenge to portions of the Indictment) (citing *Taub v. Altman*, 3 N.Y.3d 30 (2004); and *In re City of Buffalo*, 139 N.Y. 422 (1893)); *Pro Se* Appellate Brief at pp. 13-17 (challenging restitution portion of sentence) (citing *People v. Buza*, 166 A.D.2d 774, 775-76 (3d Dept. 1990); *People v. Miller*, 251 A.D.2d 747, 748 (3d Dept. 1998); *People v. Casiano*, 8 A.D.3d 761, 761-62 (3d Dept. 2004); *People v. Harden*, 174 A.D.2d 691, 692 (2d Dept. 1991); *People v. Barnes*, 135 A.D.2d 825, 826-27 (2d Dept. 1987); and *People v. Melvin*, 11 A.D.3d 639, 639-640 (2d Dept. 2004)).  Thus, Grounds One, Two, Five and Seven of DeDeo's petition are patently unexhausted.

Furthermore, in his application seeking leave to appeal from the Court of Appeals, DeDeo requested that such court consider the following appellate issues in determining whether to grant that leave application:  i) the Trial Court wrongfully allowed the prosecution to constructively amend the Indictment; ii) the County Court lacked geographical jurisdiction over the conduct alleged in Counts One, Two, and Eight of the Indictment; iii) the Trial Court's restitution order was illegal; and iv) the Attorney General illegally obtained evidence against DeDeo through the use of unlawful subpoenas. *See* Leave Application at pp. 3-4.  Such

11

application did not contain any request that New York's Court of Appeals review DeDeo's appellate claim that he was denied his right to a fair trial, before an impartial jury, because the Trial Court wrongfully denied defense counsel's for cause challenge regarding Juror No. 105. *See id.* at pp. 1-6.[6]  Therefore, DeDeo has also failed to fully exhaust the claim he asserts in his third ground for relief.

When a claim has not been fully exhausted by a habeas petitioner, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[7]  Therefore, this Court must determine whether it would be futile for DeDeo to present any of the above-mentioned claims to the state courts in order to fully exhaust these grounds.

DeDeo cannot now pursue any of his defaulted claims through a second appeal to the

---

[6] Although DeDeo's counsel attached a copy of his appellate brief along with counsel's Leave Application, that fact did not exhaust all of the claims asserted in that appellate brief; as courts in this Circuit have observed, "[m]erely attaching [appellate] briefs [to an application for leave to appeal] is not sufficient to have exhausted . . . claim[s] in the New York Court of Appeals." *Hayward v. Brown*, No. 09 Civ. 6495, 2010 WL 2629037, at *27 (S.D.N.Y. July 1, 2010 (citing *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)).  Thus, claims asserted by counsel in his appellate brief but not referenced in the Leave Application were not exhausted for purposes of petitioner's habeas petition. *See, e.g.*, *Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000) ("[a]rguing a single claim at length [in a leave application] and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims") (citing *Grey*, 933 F.2d at 120).

[7] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits, and consider the exhausted claims on the merits. *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

Third Department because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio*, 269 F.3d at 91 (citations omitted). Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing New York's Criminal Procedure Law § 440.10(2)(c)), *see Parker v. Arcola*, 582 F.Supp.2d 273, 290 (N.D.N.Y. 2008) (Hurd, J.), DeDeo could not now properly raise these claims, all of which are plainly based on matters contained in the state court record, in a motion to vacate his judgment of conviction pursuant to CPL § 440.10. *See Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994). Finally, a criminal defendant may file only one application for leave to appeal with the New York Court of Appeals. *See Jones v. Woods*, No. 07 CV 1326, 2009 WL 4906882, at *2 (E.D.N.Y. Dec. 18, 2009) (citing N.Y. Court Rules § 500.10(a)); *see also People v. Spence*, 82 N.Y.2d 671 (1993). DeDeo therefore may not properly file a second leave application with New York's Court of Appeals with respect to the issue of whether the County Court's restitution order was improper.

In light of the foregoing, all of the above claims are "deemed exhausted" for purposes of DeDeo's habeas application. *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Johnson v. Fitzpatrick*, 9:08-CV-1194, 2010 WL 421127, at *7 (N.D.N.Y. Feb. 1, 2010) (Sharpe, J.) (citations omitted); *Jones*, 2009 WL 4906882, at *2. Although these claims are "deemed exhausted," they are also procedurally defaulted. *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also Jones*, 2009 WL 4906882, at *2; *Ciochenda v. Artus*, No. 06 Civ. 5057, 2009 WL 1026018, at *5 (S.D.N.Y. Apr. 9, 2009)

(unexhausted claims which petitioner can no longer pursue in state court are procedurally forfeited).

**B.     Consequences of DeDeo's Failure to Exhaust**

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[8]  *See Dixon*, 293 F.3d at 80-81 (citing *Coleman*); *St. Helen*, 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *Parker v. Phillips*, No. 05-CV-1323, 2008 WL 4415255, at *3 (E.D.N.Y. Sept. 24, 2008) (federal courts may only consider procedurally barred claims where the petitioner establishes cause for his default and prejudice therefrom, or that he is actually innocent of the crime of which he was convicted).

To establish legal "cause" which would enable this Court to consider his procedurally forfeited claims, DeDeo must show that some objective, external factor impeded his ability to fully exhaust his defaulted claims.  *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Pinero v. Greiner*, No. 01 CIV. 9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept. 17, 2007) (citing *Restrepo*).  Examples of such external factors include

---

[8] A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

14

"interference by officials," ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of petitioner's default.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Ikker v. Taylor*, No. 08 CV 3301, 2008 WL 5110866, at *4 (E.D.N.Y. Dec. 3, 2008), *appeal dismissed*, *Ikker v. Taylor*, No. 09-0090-pr (2d Cir. Apr. 17, 2009).

Petitioner has not established legal cause for the procedural defaults detailed *ante*. Significantly, he has never claimed in the state courts that appellate counsel rendered ineffective assistance because such counsel either failed to:  i) fairly apprise the Third Department of the federal nature of the appellate claims discussed *ante*; or ii) request leave from the Court of Appeals regarding the Third Department's denial of counsel's appellate challenge relating to Juror No. 105.  *See* Petition at ¶ 10 (noting that petitioner did not file any challenges to his conviction other than his direct appeal).  Additionally, although DeDeo was afforded the opportunity to file a Traverse herein in which he could have addressed respondent's arguments that DeDeo was procedurally barred from obtaining the relief he seeks with respect to the above-referenced claims, petitioner instead specifically advised the Court that he would not file any Traverse in this action.  *See* Dkt. No. 20.  Finally, nothing in this Court's review of the file in conjunction with this matter suggests – much less establishes – that DeDeo has demonstrated legal cause for the procedural defaults noted above.

Since DeDeo has not demonstrated legal cause for his procedural defaults,[9] this Court need not consider whether he has suffered the requisite prejudice, because federal habeas relief

---

[9] The petitioner bears the burden of demonstrating cause for his procedural default and resulting prejudice.  *See Simpson v. Portuondo*, No. 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

is unavailable under this limited exception permitting review of procedurally forfeited claims unless **both** cause and prejudice is demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.); *D'Alessandro v. Fischer*, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*).

The finding that DeDeo has failed to establish cause for his procedural defaults does not necessarily preclude this Court from considering his procedurally forfeited claims, however, because, as noted above, a federal court may nonetheless properly review such claims if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice. *E.g.*, *Dixon*, 293 F.3d at 80-81 (citation omitted).  On this question, however, the Second Circuit has noted that:

> [T]he fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995). . . .  " '[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley*[], 523 U.S. [at] 623 . . . .  "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' "  *Id.* (citing *Schlup*, 513 U.S. [at] 327-28) . . . (some internal citations and quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674, at *8; *Marengo v. Conway*, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004).

In conjunction with the present action, the state court record has been reviewed.  That review demonstrates that there was ample proof adduced at trial which established DeDeo's

16

guilt of the charged crimes.  In arriving at this conclusion, this Court specifically endorses the

foregoing findings of the Appellate Division when it rejected DeDeo's appellate claim

challenging the weight of the evidence:

> Nearly a dozen witnesses testified that they were asked by
> [DeDeo] to invest funds, either directly with him or in his real
> estate holdings business, in exchange for rental income and/or a
> favorable rate of return that never materialized and resulted in the
> loss of substantial sums of money. . . .  The evidence also
> demonstrated that [DeDeo] repeatedly failed to respond to
> requests for return of investment principal and would provide
> empty assurances in order to stave off investors and/or secure
> more "investments" from them.  One witness testified that, when
> he and his wife finally confronted [DeDeo] and asked what he
> had done with their money, [DeDeo] replied, "I spent it" and also
> said, "You know what, I'm no good bastard [sic ]."
>
> * * * * *
>
> [I]n our view, there is ample support in the record for the jury's
> conclusion that [DeDeo] never intended to make good on his
> promises to clients.  The People's theory that [DeDeo] solicited
> older clients, learned of their financial status by drafting trusts,
> and then convinced them to invest their assets with no intent to
> fulfill his promises to them regarding their investments – and,
> instead, with the intent of benefitting himself – is substantiated by
> the testimony of his son regarding [DeDeo's] business practices
> and by the abundant testimony of his former clients evidencing
> his continuous course of conduct for over a decade.

*DeDeo*, 59 A.D.3d at 849-50.

Since DeDeo cannot seek safe harbor from the dismissal of his defaulted claims under

this final exception permitting habeas review of those claims, the Court denies, as procedurally

forfeited, the claims he asserts in his first, second, third, fifth and seventh grounds for relief.

**C.**     **Sentencing Claim**

In his fourth ground, DeDeo argues that the imposed sentence is both unduly harsh and

17

excessive in light of his "age, deteriorating health, history of honorable military service, minimal prior criminal history, strong family and community ties and the non violent nature of the charged offenses." *See* Petition, Ground Four.

This claim, however, neglects to acknowledge the fact that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F.Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see also Brown v. Donnelly*, 371 F.Supp.2d 332, 343-44 (W.D.N.Y. 2005); *Jackson v. Lacy*, 74 F.Supp.2d 173, 181 (N.D.N.Y. 1999) (McAvoy, C.J.) ("[i]t is well-settled . . . that a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law"). Petitioner's appellate counsel conceded in his brief that the imposed sentence was permitted by New York state law; in that brief, counsel noted that DeDeo was sentenced by the trial court to "the statutory maximum authorized aggregate sentence." *See* App. Br. at p. 37. The imposed sentence is therefore plainly authorized by New York law.

Arguably, this ground could be construed as a claim that the imposed sentence constitutes a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272; *see Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (the Eighth Amendment only forbids only sentences which are "grossly disproportionate" to the crime); *see also Hutto v. Davis*, 454 U.S. 370, 374 (1982). A sentence

of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense. *Brumfield v. Stinson*, 297 F.Supp.2d 607, 622 (W.D.N.Y. 2003) (citing *Thompson v. Lord*, No. 97-CV-0792, 2002 WL 31678312, at *8 (N.D.N.Y. Nov. 8, 2002) (Peebles, M.J.) [, *adopted*, *Thompson v. Lord*, No. 97-CV-0792 (Dkt. No. 19) (N.D.N.Y. Sept. 25, 2003) (Scullin, C.J.)] (other citations omitted).  Since nothing before this Court suggests – much less establishes – that the imposed sentence is grossly disproportionate to the severity of his convictions,[10] the Court denies DeDeo's fourth ground for relief.

> **D.**    **Remaining Claims**

>> **1.**    **Applicable Standard of Review**

The enactment of the AEDPA brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009) that:

> a federal court may grant a writ of habeas corpus for a claim that has previously been adjudicated on the merits by a state court only if the adjudication of the claim:

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2) resulted in a decision that was based on an

---

[10] The Appellate Division sagely observed that in light of the "predatory nature and duration of [DeDeo's] crimes, the number of victims and the severe impact that [DeDeo's] conduct had upon his victims and their families," no reduction in DeDeo's sentence was warranted on appeal.  *DeDeo*, 59 A.D.3d at 851.

> unreasonable determination of the facts in light of
> the evidence presented in the State court
> proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254(d)); *see also Schriro v. Landrigan*, 550 U.S. 465, 473

(2007) (citing 28 U.S.C.§ 2254(d)(1), (2)); *Hawkins v. Costello*, 460 F.3d 238, 242-43 (2d Cir.

2006).

In providing guidance concerning application of this standard, the Second Circuit has

observed that:

> a state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application
> of a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but
> nevertheless comes to a different conclusion than the Court did.
> [*Williams v. Taylor*, 529 U.S. 362,] 405-06 [(2000)]; *Loliscio v.
> Goord*, 263 F.3d 178, 184 (2d Cir. 2001). . . . [A] state court's
> decision is an "unreasonable application of" clearly established
> federal law if the state court "identifies the correct governing
> legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts" of the case before
> it. *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d

147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's ruling was merely incorrect or erroneous, but instead whether such

decision was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v.

Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). "While the precise method for distinguishing

objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is

well-established in this Circuit that the objectively unreasonable standard of § 2254(d)(1)

20

means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration omitted).  As the Court noted in *Schriro*, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Id.*, 550 U.S. at 473.

### 2.   **Substance of Remaining Claims**

#### (A)   **Claim Challenging Jurisdiction of Trial Court**

In his sixth ground for relief, DeDeo asserts that the County Court lacked geographical jurisdiction over him with respect to Counts Three through Eight in the Indictment because that court wrongfully allowed the prosecutor to amend the Bill of Particulars and thereafter present evidence to the jury that was unrelated to the charges that were: (i) presented to the grand jury; (ii) contained in the Indictment, and (iii) contained in the original Bill of Particulars.  *See* Petition, Ground Six.

The Appellate Division rejected this claim when raised by DeDeo in the context of his direct appeal.  In so ruling, that court found "no merit" in DeDeo's claim that the Trial Court erred in granting the prosecution's motion to amend the Bill of Particulars to clarify the fact that the victims named in Counts 1 through 7 of the Indictment – the counts which charged DeDeo with grand larceny – were not the only victims of Count 8 – which charged DeDeo with engaging in a scheme to defraud.  *DeDeo*, 59 A.D.3d at 847.  That court determined that the changes to the Bill of Particulars allowed by the County Court "added more victims to the alleged scheme to defraud and expanded the duration of the scheme [but] did not change the theory of the case and, thus, did not result in a constructive amendment to the indictment." *Id.*

21

This Court agrees.

An indictment is properly found to have been unconstitutionally broadened only where it has been "so altered as to charge a different offense from that found by the grand jury." *United States v. Miller*, 471 U.S. 130, 144 (1985) (citation omitted).  Petitioner has wholly failed to demonstrate that the Trial Court's ruling that permitted the prosecution to amend its Bill of Particulars in the manner discussed *ante* acted to constructively amend the Indictment. He has additionally failed to demonstrate that the Third Department's determination rejecting his appellate claim that the Indictment was constructively amended, *see DeDeo*, 59 A.D.3d at 847, is either contrary to, or represents an unreasonable application of, *Miller* and its progeny

Furthermore, petitioner's "geographic jurisdiction" claim is rooted in CPL § 20.40,[11] and therefore fails to assert a federally significant habeas claim.  As the Second Circuit noted in *U.S. ex rel. Roche v. Scully*, 739 F.2d 739 (2d Cir. 1984), claims that a County Court lacked geographic jurisdiction over a defendant with respect to one or more counts in an indictment:

> [M]ust be rejected because it fails to raise an issue of federal law, which is an essential prerequisite to habeas relief.  Although New York has chosen to style § 20.40 of its Criminal Procedure Law in terms of "jurisdiction," the statute is in fact concerned with venue.  The State of New York clearly has jurisdiction over the offenses charged.  A violation of its laws allocating that jurisdiction among its various counties does not create a federal constitutional issue.  As we stated in *United States v. Mancusi*, 415 F.2d 205, 209 (2d Cir.1969), "no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from the provisions of state

_____

[11] In his *Pro Se* Appellate Brief, DeDeo's challenge to the geographical jurisdiction of the Trial Court with respect to Counts Three Through Eight of the Indictment was based upon DeDeo's claim that many of the prosecution's proposed witnesses "had no geographical jurisdiction, and/or nexus to Columbia County, as required by CPL § 20.40."  *Pro Se* Appellate Brief at p. 8.

> law." In *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976), the
> court dismissed the argument Roche makes as "frivolous and
> completely without merit." That assessment applies here as well.

*Scully*, 739 F.2d at 741-42; *see also Crispino v. Allard*, 378 F.Supp.2d 393, 414 (S.D.N.Y.

2005) (denying habeas petition challenging conviction based upon claim that trial court did not

have geographic jurisdiction over petitioner) (citing *Scully*); *Lovacco v. Stinson*, No.

97CV5307, 2004 WL 1373167, at *9 (E.D.N.Y. June 11, 2004) (same).

Since petitioner has not demonstrated that the Third Department's rejection of this

aspect of his appeal, *see DeDeo*, 59 A.D.3d at 851, is either contrary to, or reflects an

unreasonable application of, relevant, clearly established Supreme Court law, DeDeo is not

entitled to habeas relief on his sixth ground for relief.

### (B)    Evidence Used to Secure Conviction

In his final ground, DeDeo argues that the evidence used to convict him was "procured

in violation of [his] rights guaranteed by the Constitution of the United States." Although

DeDeo does not clearly state the basis for this claim in his habeas petition, this Court's review

of his *Pro Se* Appellate Brief reveals that in the Seventh Point advanced by DeDeo in that

memorandum, DeDeo argued that, in obtaining the evidence to support the criminal charges

ultimately brought against him, the New York State Attorney General's office improperly

utilized "Martin Act subpoenas" – rather than grand jury subpoenas – to obtain incriminating

evidence against DeDeo. *See Pro Se* Appellate Brief at p. 19.[12]  DeDeo appears to argue that

---

[12] Federal courts may properly look to state court appellate briefs to determine the
factual underpinnings of federal habeas claims. *See Carter v. McGinnis*, No. 01-CV-655,
2005 WL 1868882, at *8 (W.D.N.Y. Aug. 2, 2005) (where petitioner's submissions do not
provide adequate information relating to habeas claims, federal courts may look to appellate
brief for guidance regarding basis for claim).

such "illegally" obtained evidence was then wrongfully presented to the Grand Jury to secure the Indictment.  *See Pro Se* Appellate Brief at pp. 19-20.  DeDeo asserts that because the prosecutor never utilized grand jury subpoenas to obtain the relevant physical evidence against DeDeo, "[a]ll [such] evidence was illegally seized by the prosecuting attorney," resulting in violation of his constitutional rights.  *Id.*

This final ground must be denied for several reasons.

Initially, the Court finds that, as with the claim DeDeo asserts in his sixth ground for relief, petitioner's claim under the Martin Act is necessarily rooted in New York state law – CPL § 20.40 – rather than any federal law or provision of the United States Constitution.  It is well-established, however, that habeas corpus review is not available for claimed errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991); *Hawkins*, 460 F.3d at 244 ("Of course, 'habeas corpus relief does not lie for errors of state law' ") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  DeDeo's failure to cite any clearly established Supreme Court precedent which the Appellate Division purportedly failed to consider in its decision denying this aspect of his appeal (*see DeDeo*, 59 A.D.3d at 851), represents a failure of proof on the part of petitioner.

Moreover, the aspect of DeDeo's *Pro Se* Appellate Brief in which he asserts a Martin Act claim – and therefore necessarily the legal basis for the present habeas claim – is principally a challenge to the manner in which evidence was obtained in the related criminal matter and thereafter presented to the grand jury, as well as that accusatory body's subsequent issuance of the Indictment.  *See Pro Se* Appellate Brief, Point VII.  However, it is well-settled habeas law that any errors before the grand jury are necessarily cured by the petitioner's subsequent

24

conviction by a petit jury on the charges contained in the indictment.  *Moss v. Phillips*, No. 9:03-CV-1496, 2008 WL 2080553, at *7 n.11 (N.D.N.Y. May 15, 2008) (Kahn, J.) (citing *United States v. Mechanik*, 475 U.S. 66, 70 (1986)); *see also Williams v. Burge*, No. Civ. A. 9:02CV0695, 2005 WL 2179423, *6 (N.D.N.Y. Aug.15, 2005) (citations omitted) (Peebles, M.J.), *adopted* 2005 WL 5740225 (N.D.N.Y. Dec.7, 2005) (Hurd, J.).

Furthermore, nothing before this Court suggests that the manner in which the "Martin Act subpoenas" were utilized in the criminal matter below violated any of DeDeo's constitutional rights.  In this regard, the Court notes that "[t]he Attorney General has 'exceedingly broad' – indeed, 'inquisitorial' – powers under the Martin Act . . . to investigate 'all kinds of fraud incident to the sale of securities and commodities and to seek to enjoin such acts.' " *Gonkjur Associates v. Abrams*, 88 A.D.2d 854, 855-56 (1st Dept. 1982) (quoting *In re Attorney General*, 10 N.Y.2d 108, 109 (1961)).  "[I]n order to be effective in providing a remedy to those who have fallen prey to the exploitation of the public by unscrupulous individuals," the Martin Act "must not be strictly interpreted but should be given a pliable yet resilient construction enabling [it] to be applied to individual situations in a manner which best fulfills [its] beneficial purpose." *Gardner v. Lefkowitz*, 97 Misc.2d 806, 812-13 (S.Ct., N.Y. Cty. 1978).

In the criminal matter below, the Attorney General was entitled to subpoena information under the Martin Act for investigatory purposes.  Nothing before this Court suggests – much less establishes – that the use of Martin Act subpoenas in the related criminal matter – including the prosecution's use before the grand jury of the evidence obtained by those subpoenas – was improper in any way.

25

For all of these reasons, this Court therefore denies his eighth and final ground for relief.

**III.    CERTIFICATE OF APPEALABILITY**

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . .[13]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that DeDeo's habeas petition (Dkt. No. 1) is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action, and it is further

**ORDERED**, that any state court records that were not filed in this action be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of

---

[13] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).

this Memorandum-Decision and Order filed by any party).

A Certificate of Appealability shall not be issued by this Court.

**IT IS SO ORDERED.**

Dated: November 3, 2010

Thomas J. McAvoy
Senior, U.S. District Judge